Good morning, Your Honor. Tony Farmani on behalf of Mr. Grant. Your Honor, this case should go back to the district court so that either Mr. Grant can prosecute his claims on the merits or there should be an evidentiary hearing on his mental impairment and other circumstances that would warrant equitable or statutory impediment tolling. Now the reason why the district court, I think the district court made several mistakes beginning with misconstruing Mr. Grant's claim for equitable tolling. Mr. Grant is not asking for equitable tolling for the delay in the mail in receiving the California Supreme Court's order,  asked the prison trust account office to prepare his account certificate so it can prepare a petition and include that in a motion for informal properties. The prison failed to do so. They didn't do it in time. I'm sorry, but you said the district court misconstrued that. Correct, Your Honor. I don't think it was. And district court construed it as what? The district court emphasized what the district court did was interpreted Mr. Grant's claim as being one based on not receiving the California Supreme Court's order in a timely manner. That's not what Mr. Grant is saying at all. That's not part of his claim at all? It isn't, Your Honor. He's not pressing that? He's not pressing that.  He probably could press that as well, but I think he's got a much stronger position due to the prison officials' delay on the miles versus prompting case, Your Honor, which is directly on point. So he says that as soon as he got the Supreme Court's order, which I believe was on the 21st of November? The order came down on the 16th. But he got it on the 21st. That's correct, Your Honor. Okay. So those five days, he says, okay, I'm not complaining about that. But let me ask you this. He says that he immediately requested the statement from the prison authorities, the certificate. Yes, Your Honor. Do we know what immediately means? Yes, Your Honor. We know it, number one, we know it as a matter of law in Steelman, the case decided by this court, that immediately means without delay. That's the definition in the dictionary. And we know that he says it, the court, that's what the court used. And we know that his verified allegations are to be construed as being true, then unrebutted. But we also know, and that's in the supplement of excess of record, Your Honor, we also know that he did, in fact, receive it on the 21st, because that's when he sends out this request out to the prison trust office and says, hey, look, I sent this thing out to you guys on November 21st. That indicates that he did receive it on November 21st. But whether we rely on the supplement of excess of record or his allegations alone, you come to the same conclusion, which would be November 21st. Now, incidentally, Your Honor, we're not really necessarily relying on November 21st. We say that November 21st is gone, that day is done, over with. We go to November 22nd, which would have been Tuesday. Now, keep in mind now that this order came down November 16th, which would have been a Wednesday. So assuming it was in mail and he took prison officials to process the mail on Monday, which would have been November 21st, they still had plenty of time when he asked for his prison trust certificate to prepare the certificate and give it to him so he can file it with his petition. But we don't know when he actually received the certificate, do we? We do know, we do from his allegations, Your Honor. What happened was the certificate was given to the counselor on December 2nd. But he didn't actually receive it until December 19th, which is the day that he signs off on the petition, mailing the certificate. Now, is there he made the request, you say, on November 21st. Is the second request on December 8th? The second request is later down the line. That's correct, Your Honor. It's not a second request. He's basically following up on it and saying, hey, this is taking longer than usual. Can you give me some indication of where we are? But so that on December 8th, there was an inquiry by him at least as to when he would receive the certificate, and he says he still has not received it. That's correct, Your Honor, because what happened was the certificate was given to the correctional officer, the counselor, on December 2nd. The counselor, according to the allegations, the sworn allegations, the counselor held onto it until December 19th and then called Grant, Mr. Grant, over to sign off. The way it works at the prison, Your Honor, is that you apply for the certificate. The certificate is given to the counselor for that particular prisoner. Then the counselor is supposed to call the prisoner down so he can sign off and send a petition out. What happened in this case, Your Honor, is that the counselor held onto it until December 19th. Of course, one easy way to get around that is for the prisoner just simply to file with a letter saying, I've asked for my certificate. I haven't gotten it yet. Can you file this and hold it until I send you my certificate, right? Well, it's not as easy. It would seem to be, you know, it might appear to be that easy, but in practice it isn't, Your Honor. When you file... Well, it seems easier than, you know, all this hassle with the prison bookkeeper or whatever it is. It is easier, but it's also extremely risky because once you file it in the district court, the district court may look at it on a screening process right away and dismiss it. And once it's dismissed, it's done. And you'll have the same appeal you have now. Well, we would have it... Perhaps, yes, and I think you would be out of luck if anybody were to... We don't even hold prisoners to following the rules. We hold them to not only not following the rules, but to guess what the court might say if he didn't follow the rules is expecting a little much from a pro se prisoner. I think so, too, Your Honor, particularly because we know from Supreme Court law that the petition, while it's pending in the federal court, the statute of limitations is not being told. Let me ask you, is it your position that there has to be an evidentiary hearing? I think not in this... For a purpose to determine whether or not he's entitled to equitable tolling? Not on this ground, Your Honor. Now, if Your Honors want to take a look at the other claim he's got, which is the mental impairment claim, when we're looking at why it took him longer than usual to, I guess, initiate the collateral review process by the state courts, then, yeah, then I think that would warrant an evidentiary hearing. On the first point, your position is that he's just entitled to equitable tolling, even though the... Let's see, his petition was due on the 28th of November, and it gets filed on the 19th of December. But if you subtract the time that the certificate was being held by the prison officials, which would have been from November 21st up until December 19th, if you take that out of the equation, then he would be timely, because the clock stopped on November 21st. All right. Do you want to save your two minutes to rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Viena, California Deputy Attorney General. With regard to the question about his diligence in pursuing or in obtaining his trust certificate and filing it. First, before you get to diligence, do you dispute or have you disputed in the record or in the briefs the account that counsel just gave of the dates? Yes, Your Honor. What dates do you dispute and where? Well, I guess what I would say is we dispute that we would say that he is not entitled to equitable tolling from the moment he filed his request for trust certification. Well, do you agree on the date he filed that? What I would say is that it is somewhat ambiguous, because... Well, have you disputed it in your briefs or anywhere? In my brief, I think I said that he claimed in the district court to have filed it about the 22nd of November. So there might be one day difference. Okay. But otherwise, I understand the legal arguments we're coming to. But as far as the factual arguments, we can take the dates that counsel gave us. Yes, Your Honor, I think that's correct. That's fine. Now let's go to the legal arguments. Certainly he's not entitled to equitable tolling from the moment he requests something from the prison, because it's not extraordinary that it takes a few days for something to take place. So if he, for example, asked for his trust account on the 21st or the 22nd, he wouldn't be entitled to tolling. Well, he's never alleged that it would be extraordinary for the prison to take a few days. But there's one other, and I believe now critically... Well, on the 28th, though, the statute ran on the 28th. Expired. Expired. And this is what I think is critically important with regard to analyzing this claim. And Judge Reinhart, I think, keyed into it when he asked about the supplemental excerpt of record where Mr. Grant inquired whether the prison was going to get around to certifying his trust account. It's at Mr. Carman. That's the second time. He made the request earlier, and then on December 8th, he inquired because he still hadn't received it. I think it's December 5th, but I could be off on my calculation. It doesn't really matter. Right. Either way. So the point is there's no doubt that he first requested it on whatever it is, the 21st or 22nd. He didn't get it. And on December 5th or 8th, he inquired, when am I going to get it, right? That's correct. There was some doubt in our brief about whether he had done anything to show diligence between the time he first submitted, assuming that it's true that he submitted his trust account request. Let me go right there and ask the question Judge Pius asked your opponent. Do you think an evidentiary hearing is needed on this issue? No, Your Honor, and here's why. Two reasons why. First of all, I expressed some question about whether he had been diligent between the 21st and the expiration of his statute of limitations. 21st was the date of the first request? Either the 21st or the 22nd. Go ahead. The date of the first request. But what we know now, and no one knew before now, is that when he submitted that request, he believed he had at least until December 16th to file a timely. What difference does that make? Well, two differences. One is it explains why he was casual in his approach. Second, if this is an equitable proceeding, and principles of equity seem to apply, if there was some additional delay between December 2nd, which we think is already too late, but if there's additional delay between December 2nd and December 19th, it's because he told the prison officials there's no hurry. Where does it say that in the record? I've highlighted it, but supplemental excerpts of record, page 1. Mr. Farmani's supplemental excerpts of record. It is the request for status report. He says, on 11-21, I sent my trust account certification request. And then on the 1, 2, 3, 4. And then he said later, when am I going to get it, right? He says, when am I going to get it? Because, and the because is quite important, he says, because I have only until December 16th to file a timely federal habeas corpus petition. So he told the prison officials that there was. So he's responsible for the fact that it took the prison officials that long because he didn't press them harder. Well, I would say that he told them there was no hurry. It's not that he didn't press them. He told them affirmatively there's no hurry. But still, in any event, he was already too late. Why was he already too late? That's what I don't understand. The statute of limitations expired on the 28th. Expired on the 28th. On the 28th. So your point is that he didn't even make a request until after the 28th? No, he made a certification request before the 28th. He didn't file a petition. He didn't do what happened in Miles, which was hand to prison officials his petition for filing. He's not entitled to constructive tolling or constructive filing from the 22nd. All he did was he was engaged in following prison procedures and asking for a trust certificate. That took six or seven days, depending on whether the 21st or the 22nd is the day that he received the notification through the mail of the California Supreme Court's denial. Nowhere has anyone suggested or provided any proof that six or seven days is an extraordinary period of time. And, in fact, it seems clear that it wasn't extraordinary to Mr. Grant because he was unconcerned for two full weeks. So what is an extraordinary period of time for prison officials not to give him a certification that he needs to file a habeas petition? The burden is on him to establish a factual basis for it. He'd have to say what a reasonable period of time, what a reasonable expectation is for a prisoner in that prison when requesting it. And he's never even suggested that. Do you think it was unreasonable for him to wait until he got the certificate before filing? Yes, I do. Why? Well, I mean, these folks don't really know that, you know, they could get- I would dispute that somewhat, Your Honor, because- The rule does say that you have to file a certificate with a habeas petition. Well, the rule sort of says that. With the 2004 amendments to the rule, and this isn't in my briefing, but the 2004 amendments to the rule compel the clerk of the district court to accept for filing the pleadings of pro se petitioners, even if there's a procedural defect, and it says explicitly, like a failure to include the check or certification of a request for informal proper status. It's not in your briefing, so I suppose we shouldn't pay much attention to that. I beg your pardon, Your Honor? I said it's not in your briefing, so I suppose we shouldn't pay much attention to that. Because you follow the rules clearly, carefully. There is no equitable tolling of that rule. What is in my briefing, that's my time, Your Honor. But what is in my ruling, what is in my pleading, is that there's nothing at all unusual in district courts in accepting those pleadings. I cited a case, a district court case, out of the Southern District. But it would be just as reasonable for a prisoner to think, well, I need the certificate before I can file, so I'm going to, you know, make the request. Yes. They produce them, and then I'll file my habeas petition. It might be. There's nothing unreasonable about that. And it might have been unreasonable, for example, for Mr. Grant to have said to the prison officials, I need this today, or I need this within three days. But he didn't say that. No, I just have to say to you, this, on its face, is not exactly a frivolous habeas claim. I don't think it's going to prevail or it's meritorious. But it's not a frivolous claim. This individual has a right to have a habeas hearing. I don't know. I really don't understand why the State of California would fight this case to prevent him from having a hearing in federal court. Would that be such a terrible thing, to find out if his conviction was unconstitutional? Because he didn't get the certificate and he didn't figure out that even though the rule says you have to have the certificate, that he didn't ignore the rule and file it without the certificate that he was supposed to have? Why does the State so oppose his right to have a habeas hearing? Well, two reasons. We think that his constitutional claims were properly resolved by the state courts. But the second is line drawing under the statute of limitations is always going to present a difficult problem because some cases are going to be just before and some cases just over the line. This case is slightly over the line, and it's slightly over the line because Mr. Grant didn't understand when his statute of limitations expired. That is unfortunate but unavoidable, and thus we're going to send all of our prisoners to law school. That's the problem. You're absolutely right. You're acting as if they did go to law school. I mean, he's making a real effort. He expects the certificate. The rule tells him that the certificate has to be filed with it. He waits for the certificate. Maybe if he'd gone to law school, he wouldn't have done that. But the kind of rules you're asking for would require them to go to law school. And our rule is when it's a pro se prisoner, we give them flexibility. We'll look at it with some tolerance. And the State could also look at it with a little bit of tolerance. It wouldn't have hurt the Attorney General before she leaves her position to show a little bit of understanding and tolerance of the rights of prisoners. Your Honor, thank you. And I'm over my time, and the Court's been very indulgent with me, and I appreciate that.  I'm not criticizing you, Bruce. I just think when you go home, you might think, really, is this what you went to law school for, to prevent this person from having a hearing on his constitutional rights? Your Honor, I know habeas is complex. This Court has instructed me in that regard on a few occasions as well. And you've instructed us. The Attorney General has informed us quite successfully. We have tried. Mr. Grant's problem was his own, though. He waited until the last minute. He put himself and the prison in a box. We think that lack of diligence, waiting 354 days, in fact, I would say waiting longer than that, he could have filed his State habeas petitions almost a year or two earlier if he had wanted to. That's a new issue that you hadn't gotten to.  to file a habeas petition? Are you penalized if you take most of that year before, as a prisoner, before you file a petition? And that's an issue we haven't discussed in this argument yet. Well, stop clock, you haven't. I agree with that. But it's not penalizing him. It is preventing him from unilaterally extending the limitations period because he waited to the very end. Okay. All right. Thank you very much, Your Honor. Thank you. And wish the Attorney General good luck on her new career. Tell her she can go out in a blaze of glory by withdrawing this opposition. This Court has asked me to communicate with her in the past, and I'll pass this one on as well, Your Honor. Particularly the congratulations. Thank you, Your Honor. Okay. Just a couple of quick points, Your Honor. Number one, if this Court were not to find that it was an extraordinary circumstance that Mr. Grant faced, then it would have to overrule Miles, and it would have to overrule Steelman. And the fact that Mr. Vienna just brought up what happened prior to 354 days, well, we know that this man has PTSD. He explained that to the Court. First, you'd have to get to the legal argument. Does a prisoner really have a right to wait? Absolutely, Your Honor. Everyone has a right to wait. Whether you have PTSD or not, I'm not aware of any case that says you can be penalized. You've only got a year, which isn't quite a long time to file a habeas petition or an appeal or whatever if you're a prisoner. And if you don't know that if you use that time, you're going to be penalized. And that's what the District Court did, penalized him for the amount of time it took initially to initiate the process. And, you know, in Steelman, the attorney did the same thing. He waited until the last minute, and the Court said one event may have multiple causes, but the fact remains that the prison officials promised to the lawyer that we're going to get this thing faxed over in time immediately. That's the word that was used. That was enough for the Court to find that approximately caused a delay. Now, another thing is Mr. Vienna brought up the issue about how Mr. Grant thought that he had this additional time. Well, where could he have gotten his knowledge, Your Honor? He's in prison. He's locked up. He doesn't have access to Westlaw, Lexis at his pleasure. He gets his information from that library. That library misinformed him. That's why he probably thought that he had additional time. He relied on case law from this Court. So there's a lot of stuff going on here. It's not like they were just sitting around doing nothing. Well, there are other issues we could get to. Right. I mean, it's an interesting case, but I think it's very simple if you just rely on Miles v. Pronti and Steelman. You get to the result that a prison official's delay in processing his account, however that delay came about, is enough for him to be able to prosecute his claims. Very simple, Your Honor. Thank you. Thank you. Please get started. You will be submitted. Thank you both very much. Thank you.
judges: Reinhardt, Tashima, Paez